**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| BRANDON CALLIER, <br><br> Plaintiff, <br><br> v. <br><br> PANAMERICAN CONSULTING, LLC a Nevada Limited Liability Company and GHOLAMALI HAJIMOMEN <br><br><br> Defendants. | § § § § § § § § § § § § § § § §  **EP22CV0422** |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, BRANDON CALLIER, brings this action against Defendants PANMERICAN CONSULTING, LLC and GHOLAMALI HAJIMOMEN and alleges based on personal knowledge and information, and belief, as follows:

### PRELIMINARY STATEMENT:

1.  As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

2.  Plaintiff Brandon Callier ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendants Panamerican Consulting, LLC and Gholamali Hajimomen sent a series of automated text messages for the purposes of

1

commercial solicitation by contacting Plaintiff's cellular telephone without prior express written consent and not related to any emergency purpose, which is prohibited by the TCPA.

3. Plaintiff never consented to receive any of these automated text messages.

## PARTIES:

4. Plaintiff is BRANDON CALLIER ("Plaintiff"), a natural person, who resides in El Paso, Texas, and is a citizen of the State of Texas, and was the individual who received the alleged phone calls in this case on his private mobile telephone, and was a resident of Texas during the calls, in this case in El Paso County, Texas.

5. Defendant PANAMERICAN CONSULTING, LLC ("Panamerican") is a limited liability company organized and existing under the laws of Nevada with a principal address of 3843 S Bristol Street, Ste 308, Santa Ana, California 92704 and can be served via its registered agent United States Corporation Agents, Inc, 500 N. Rainbow Boulevard, Ste 300 A, Las Vegas, Nevada 89107.

6. Defendant GHOLAMALI HAJIMOMEN, also known as ALI HAJIMOMEN ("Hajimomen") is a natural person, resident of California, managing member of Defendant Panamerican, and can be served at his principal residence at 22 Via Honesto, Rancho Santa Margarita, California 92688.

## JURISDICTION AND VENUE

7. **Jurisdiction**. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Ser's., LLC*, 565 U.S. 368, 372 (2012).

8. **Personal Jurisdiction**. This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents and derive revenue from Texas

residents and they sell goods and services to Texas residents, including the Plaintiff. Defendants maintain offices in this District and operate their business within this district.

9. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims the calls and sale of goods and services directed at Texas residents, including the Plaintiff occurred in this District and because the Plaintiff was residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

## Statutory Background

## The Telephone Consumer Protection Act

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

### The TCPA Prohibits Automated Telemarketing Calls

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or pre-recorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call." See 47 U.S.C. § 227(b)(1)(A)(iii).

12. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). See 47 U.S.C. § 227(b)(3).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are

3

prohibited because, as Congress found, automated or pre-recorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

15. In 2013, the FCC required prior express written consent for all autodialed or pre-recorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver pre-recorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]" In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The National Do-Not-Call Registry

16. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

17. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

18. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

## Texas Business and Commerce Code § 302.101

19. The Texas Business and Commerce code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas.

20. Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

21. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §302.303.

## **FACTUAL ALLEGATIONS**

22. Defendant Panamerican is a company engaged in the elimination of consumer debts.

23. Defendant Panamerican uses phone calls containing pre-recorded music when targeting potential customers with phone calls.

24. Each and every text message at issue was sent to Plaintiff's phone number ending in 4376.

25. Plaintiff personally registered his phone number ending in 4374 successfully to the National Do-Not-Call Registry in January 2020.

26. At all times material hereto, Plaintiff maintained and used a residential cellular telephone line, with a phone number ending in 4374.

27. At all times material hereto, Plaintiff was the subscriber of the telephone number ending in 4604 and paid his cell phone bill through Boost Mobile.

28. Plaintiff never gave Defendants his phone number or prior express written consent to receive calls.

29. On September 9, 2022, Plaintiff received a phone call with 505-420-6880 showing on the caller identification. Plaintiff answered the phone call and was greeted with pre-recorded music playing. Plaintiff listened to the pre-recorded music for approximately 10 seconds before hanging up the phone.

30. On September 23, 2022, Plaintiff received a phone call with 505-418-7566 displayed on the caller identification. Plaintiff answered the phone call and was greeted with pre-recorded music playing. This was the same pre-recorded music playing in paragraph 26. Plaintiff disconnected the phone call.

31. On November 8, 2022, Plaintiff received a phone call with 505-418-7564 displayed on the caller identification. Plaintiff answered the phone call and was greeted with pre-recorded music playing. This was the same pre-recorded music playing in paragraph 26. Plaintiff disconnected the phone call,

32. On November 10, 2022, Plaintiff received a phone call with 505-388-0973 displayed on the caller identification. Plaintiff answered the phone call and was greeted with the same pre-recorded music that played in paragraph 26. Plaintiff continued with the phone call in order to

determine who was behind the constant phone calls with pre-recorded music playing when answered.

**33.** When the November 10, 2022, phone call was transferred to a human being, the person answered with "Enrollment Center. This is Ryan with United Assist Group. Who do I have the pleasure of speaking with today?"

**34.** The conversation from paragraph 33 continued:

> Plaintiff: "My name is Brandon."
> Ryan: All right Brandon, how are you doing?
> Plaintiff: "I'm good how are you?"
> Ryan: "Glad to hear it. Not bad at all. Are you reaching out about pre-approval for financial help?"
> Plaintiff: "I just got a phone call, I answered it, it went to some music, and then you came on."

The representative then proceeded Plaintiff for a "debt validation program."

**35.** Plaintiff answered "Ryan's" questions and was eventually emailed a contract listing Defendant Panamerican as the culprit behind the anonymous phone calls with music playing upon answering the phone.

**36.** Each and every phone call Plaintiff answered had pre-recorded music playing when Plaintiff answered the phone.

**37.** Plaintiff received missed phone calls on September 8, September 9, September 10, September 12, September 13, September 14, and September 15, 2022, with the same 505-420-6880 phone number displayed on the caller identification.

**38.** Defendants routinely violate the TCPA as a part of their business model and knowingly and willfully commit TCPA violations.

**39.** Table A below displays the phone messages made to Plaintiff by Defendant.
TABLE A:

| Call: | Date: | Caller ID: | Time: | Outcome: |
|---|---|---|---|---|
| 1 | 09/08/2022 | 505-420-6880 | 12:04 PM | Missed call |
| 2 | 09/09/2022 | 505-420-6880 | 9:02 AM | Missed call |
| 3 | 09/09/2022 | 505-420-6880 | 12:04 PM | Pre-recorded message |
| 4 | 09/10/2022 | 505-420-6880 | 11:41 PM | Missed call |
| 5 | 09/10/2022 | 505-420-6880 | 2:53PAM | Missed call |
| 6 | 09/12/2022 | 505-420-6880 | 8:38 AM | Missed call |
| 7 | 09/13/2022 | 505-420-6880 | 3:56 PM | Missed call |
| 8 | 09/14/2022 | 505-420-6880 | 2:09 PM | Missed call |
| 9 | 09/15/2022 | 505-420-6880 | 8:47 AM | Declined call |
| 10 | 09/23/2022 | 505-418-7566 | 1:17 PM | Pre-recorded message |
| 11 | 10/04/2022 | 505-418-7566 | 2:02 PM | Missed call |
| 12 | 11/02/2022 | 505-418-7564 | 10:35 AM | Missed call |
| 13 | 11/08/2022 | 505-418-7564 | 9:00 AM | Pre-recorded message |
| 14 | 11/10/2022 | 505-388-0973 | 4:20 PM | Pre-recorded message |

**40.** Plaintiff has never had an established business relationship with Defendants or has never requested information from Defendants.

**41.** Each and every phone call Plaintiff received from Defendant Panamerican was placed while knowingly ignoring the national do-not-call registry.

**42.** Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

**43.** Plaintiff received the phone calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with Boost Mobile as a cellular telephone number and is used for personal purposes.

**44.** Defendants' pre-recorded phone calls are not exempt from 47 U.S.C. 227(b) because they were not made for emergency purposes.

**45.** Defendants' phone calls to Plaintiff were "telephone solicitations" as defined by the TCPA.

**46.** Defendants' phone calls to Plaintiff were "unsolicited advertisements" as defined by the TCPA.

47.     On November 13, 2022, Plaintiff searched the website https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp and did not locate Texas telephone solicitation as required by Texas Business and Commerce Code 302.101.

48.     Defendants are not registered to solicit in Texas via the telephone.

49.     In summary, Plaintiff received fourteen (14) telemarketing calls from Defendants to Plaintiff's personal cell phone number which is registered on the National Do-Not-Call list.

### PERSONAL LIABILITY OF DEFENDANT HAJIMOMEN

50.     Defendant Hajimomen is personally liable under the "participation theory" of liability because he had direct, personal participation in the conduct that violated the TCPA, or knowingly authorized such conduct. See, e.g., *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12- 22330-CIV, 2015 WL 3644598, at *3 (S.D. Fla. June 10, 2015).

51.     Hajimomen knew of Defendant Panamerican's TCPA violations, and specifically directed employees and/or agents of Panamerican to make those violations despite being aware of the prohibition of using phone calls with pre-recorded messages.

52.     Hajimomen authorized and oversaw each of Panamerican's telemarketing processes and calls which were made on behalf of Panamerican.

53.     Hajimomen knew, or should have known, that Plaintiff's telephone number was on the National Do-Not-Call Registry long before the phone calls were sent, and despite this fact, Hajimomen made the decision to direct his agents to call Plaintiff's cell phone number without his prior express written consent.

54.     Hajimomen makes the day-to-day decisions for Panamerican.

55.     Hajimomen made the decision to target Texas telephone numbers for telemarketing purposes using pre-recorded message calls, including calls to Plaintiff's number

9

56. Hajimomen is also personally liable because he was responsible for ensuring Panamerican's agents and/or employees do not solicit consumers with whom no prior business relationship existed.

57. "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985).

58. The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct....or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

59. Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.
>
> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal

involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

**60.** The Same Court held that corporate officers were also personally liable for DTPA violations:

> The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

**61.** At all times material to the Complaint, acting alone or in concert with others, Defendant Hajimomen has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Panamerican including the acts or practices set forth in this Complaint.

**62.** Defendant Hajimomen is a founder and principal member and operator of Panamerican, controls the day-to-day operations of Panamerican, and directs his employees, agents, salespersons, and solicitors to make TCPA-violating phone calls and to solicit debt relief services.

**63.** Defendant Hajimomen approves the telemarketing scripts, signs the contracts, pays commissions for the illegal behavior, and directs illegal calls to be made for Panamerican's financial benefit.

11

64. Defendant Hajimomen is not a mere bystander. He is the mastermind that schemed, planned, directed, initiated, and controlled illegal behavior.

65. Defendant Hajimomen is well aware this conduct violates the TCPA and Tex. DPTA and refuses to alter the behavior. Mr. Hajimomen is the principal manager of Panamerican and the only person with the power to make unlawful behavior stop. Yet, he has not taken any precautionary measures to stop the behavior because the behavior benefits him financially. Defendant Hajimomen breaks the law with his eyes and pocketbooks wide open.

66. Defendants Hajimomen and Panamerican have operated as a common enterprise while engaging in deceptive acts and practices and violations of law alleged herein. Defendant Hajimomen has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Panamerican that constitute a common enterprise.

67. Defendant Hajimomen and Defendant Panamerican should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via Tex. DTPA because they committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

68. Defendant Hajimomen should be held liable because to do otherwise would allow him to simply dissolve Defendant Panamerican and set up a new corporation and repeat their conduct. This would result in both the TCPA and DTPA being unenforceable.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

69. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

70. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's

12

rights and interests in Plaintiff's cellular telephone.

71. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

72. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

73. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

### Plaintiff's Cell Phone is a Residential Number

74. The calls were to Plaintiff's cellular phone ending in 4374 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff's cell phone is registered in his personal name. Plaintiff pays for the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### CAUSES OF ACTION

### I.   FIRST CLAIM FOR RELIEF

**(Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227(c) et seq.)**

75. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

76. Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

77. Plaintiff was statutorily damaged at least fourteen (14) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500.00 per call.

78. Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful or knowing violation.

79. As a result of Defendant's and Defendant's agents' violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages, or $1,500.00 if trebled, for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

80. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II.    SECOND CLAIM FOR RELIEF:

**(Non-Emergency Prerecorded Calls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))**

81. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

82. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency

telemarketing calls with pre-recorded messages to Plaintiff's cellular telephone number without his prior express written consent.

**83.** Plaintiff was statutorily damaged at least fourteen (14) times under 47 U.S.C. § 227(b)(3)(B) by the Defendants by the telephone calls described above, in the amount of $500.00 per call.

**84.** Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(b)(3)(C) for this willful or knowing violation.

**85.** Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

### III.   THIRD CLAIM FOR RELIEF

#### (Violations of Texas Business and Commerce Code 302.101)

**86.** Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

**87.** The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

**88.** Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a)**.

Plaintiff is entitled to an award for all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees and attorney's fees. **Texas Business and Commerce Code 302.302(d)**

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOES as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for fourteen (14) calls.

E. An award to Plaintiff of damages, as allowed by law under the TCPA;

F. An award to Plaintiff of pre-judgment and post-judgment interest, and costs, as allowed by law and equity

G. Such further relief as the Court deems necessary, just, and proper.

November 14, 2022

Respectfully submitted,

*/s/ Brandon Callier*

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912

915-383-4604

## I.     Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: November 14, 2022

*/s/ Brandon Callier*

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604